Jonathan O. Hafen (6096) (jhafen@parrbrown.com)
Victoria R. Luman (16092) (vluman@parrbrown.com)
W. Ash McMurray (16899) (amcmurray@parrbrown.com)
Michael S. Wilde (14366) (mwilde@parrbrown.com)
PARR BROWN GEE & LOVELESS, P.C.
101 S. 200 E., Suite 700
Salt Lake City, UT 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750

*Attorneys for Plaintiff*

### IN THE FOURTH JUDICIAL DISTRICT COURT

### IN AND FOR UTAH COUNTY, STATE OF UTAH

| | |
|---|---|
| MOUNTAINVILLE COMMERCE, LLC, d/b/a CASTLESQUARES d/b/a CASTLE SPORTS, a Utah limited liability company, BART BOGGESS, an individual, JERRY BOGGESS, an individual, and IAN BOGGESS, an individual<br><br>Plaintiffs,<br><br>v.<br><br>AUTO-OWNERS INSURANCE COMPANY, a Georgia Corporation,<br><br>Defendant. | **COMPLAINT**<br><br>Case No.:<br><br>Judge: |

Plaintiffs Mountainville Commerce, LLC d/b/a Castlesquares d/b/a Castle Sports ("Castle"), Bart Boggess, Jerry Boggess, and Ian Boggess (collectively "Plaintiffs"), by and through their counsel of record, hereby complain of Defendant Auto-Owners Insurance Company ("AOI") and allege as follows:

**EXHIBIT 1**

## NATURE OF THE ACTION

1. Plaintiff Castle is a limited liability company formed under the laws of the State of Utah.

2. Plaintiffs Bart and Ian Boggess are residents and citizens of the State of Utah.

3. Plaintiff Jerry Boggess is a resident and citizen of the State of Florida.

4. Upon information and belief, Defendant AOI is a Georgia corporation with its principal place of business in Michigan.

5. Castle is a game company that markets and sells a 9 Square game.

6. 9 Square is a twist on the classic school-ground game four square. In 9 Square, a grid of nine squares is lifted off of the ground. If the ball enters a player's square and that person is unable to hit the ball into another person's square, that person is out of the game. The goal of the game is to advance to the center square.

7. To protect itself from liability, Castle obtained insurance from AOI.

8. Castle obtained a Tailored Protection Insurance Policy, policy no. 204643-57886005-20, providing coverage from June 22, 2020 to June 22, 2021.

9. A true and correct copy of this policy is attached as Exhibit 1 hereto.

10. Castle obtained a Tailored Protection Insurance Policy, policy no. 204643-57886005-21, providing coverage from June 22, 2021 to June 22, 2022.

11. A true and correct copy of this policy is attached as Exhibit 2 hereto.

12. Castle obtained a Tailored Protection Insurance Policy, policy no 204643-57886005-22 ("Policy"), providing coverage from June 22, 2022 to June 22, 2023.

13. A true and correct copy of this policy is attached as Exhibit 3 hereto.

14. On June 22, 2020, at 1:41 PM, Castle received an email from a representative of 9 Square in the Air, LLC ("9SITA") accusing Castle of using a trademarked product name "9 Square in the Air" in its advertising and requested that Castle remove the reference.

15. Castle requested that 9SITA identify where it was misusing 9SITA's alleged product name.

16. 9SITA identified screen shots of Castle's website where it allegedly used 9SITA trademarked product name. 9SITA asked Castle to remove references to "9 Square in the Air" and further requested that if it used the phrase in advertising, such advertising would need to be modified.

17. Castle removed references to "9 Square in the Air" and confirmed that it had no other advertisements that mention "9 Square in the Air."

18. A true and correct copy of this correspondence is attached as Exhibit 4 hereto.

19. On August 13, 2020, Castle received a demand letter from a law firm representing 9SITA.

20. A true and correct copy of this letter is attached as Exhibit 5 hereto.

21. The letter states that 9SITA was the first to market the 9 Square game and that potential customers would see Castle's product and assume it was made by 9SITA.

22. The letter states that Castle has been marketing, advertising, and/or distributing products that infringe on 9SITA intellectual property rights and that such practices infringed on 9SITA's trade dress and patents.

23. The letter states that 9SITA would suffer damage if Castle continued its actions.

24. The letter demanded that Castle cease offering for sale, marketing, or advertising its 9 Square game.

25. On April 15, 2022, Castle received another letter from a different attorney representing 9SITA.

26. A true and correct copy of this letter is attached as Exhibit 6.

27. The letter asserts that 9SITA's product designs and trade dress are protected by trademark and patent.

28. The letter asserts that Castle copied the appearance and features of 9SITA's 9 Square game and that Castle sought to capitalize on 9SITA's goodwill with customers to pass off its game as 9SITA's game.

29. The letter states that a large percentage of both Castle's and 9SITA's sales take place online where customers can only compare images of the games.

30. The letter asserts that Castle has used images in its online vendor websites, including Amazon, that are strikingly similar to the images used in 9SITA's online sales channels.

31. The letter asserts that Castle has used videos with 9SITA's trademark to market its own game.

32. The letter asserts that Castle has used quotes from 9SITA on its blog.

33. The letter asserts that Castle referred to 9SITA on its blog and plagiarized an interview with 9SITA's president to make it appear that 9SITA's president encouraged people to buy Castle's game.

**EXHIBIT 1**

34. The letter asserts that Castle has purchased Google Ads for 9SITA's trademarked phrase "9 Square in the Air" and otherwise purchased ads using 9SITA's trademarked name.

35. The letter demanded that Castle cease offering for sale, marketing, advertising, and distributing its 9 Square game, among other things.

36. The letter threatened that if Castle did not promptly comply with its demands, 9SITA would enforce the demand through litigation and included a draft complaint.

37. On April 27, 2022, Castle's intellectual property attorney responded to the various accusations by 9SITA's most-recent attorney, including requesting evidence that Castle was using the "9 Square in the Air" trademark, and facts regarding alleged trade dress.

38. The April 27, 2022 email also responded to the assertion that Castle had made false representations on its website and that comparative advertising is an allowable instance of trademark use.

39. On May 13, 2022, having had no response from 9SITA, Castle's trademark attorney followed up with 9SITA's attorney regarding whether it had the opportunity to discuss the matter with 9SITA.

40. On May 19, 2022, 9SITA's attorney responded that it had filed suit against Castle ("Lawsuit").

41. A true and correct copy of this correspondence is attached as Exhibit 7.

42. A true and correct copy of 9SITA's complaint in the Lawsuit is attached as Exhibit 8.

43. On March 14, 2023, 9SITA filed an amended complaint in the Lawsuit.

44. A true and correct copy of 9SITA's amended complaint in the Lawsuit is attached as Exhibit 9 ("Amended Complaint").

45. The Amended Complaint alleges, among other things, that:

   a. Castle created photographs of its product to look like 9 Square LLC's product in the angle and feel of the pictures;

   b. Castle used 9 Square LLC's product bags to market its product;

   c. The design, style, size, and shape in Castle's marketing photographs are essentially identical to 9SITA;

   d. Castle has copied the appearance of 9SITA's game in its YouTube videos;

   e. Castle has displayed images on its vendors' website that are strikingly similar to the images 9SITA uses on its online sales channel;

   f. Castle has used videos with 9SITA's trademarks to market its own game;

   g. Castle used quotes from 9SITA in its blog;

   h. Castle plagiarized an interview with 9SITA's president making it appear that he encouraged people to buy Castle's product;

   i. Castle purchased Google Ads for the trademarked "9 Square in the Air" which unfairly competes and causes confusion with 9SITA's product;

   j. Castle acquired the Pinterest handle @9squareintheair, which unfairly competes and causes confusion with 9SITA's product;

   k. Castle uses confusingly similar trade dress in connection with its offering for sale and promotion of its 9 Squares game; and

   l. Because of Castle's actions, 9SITA has been damaged.

46. Castle timely responded to and otherwise appropriately defended the Lawsuit, which is ongoing.

47. Castle notified AOI of the Lawsuit on or around April 24, 2023 and tendered its defense to AOI.

48. On May 26, 2023, AOI issued coverage correspondence denying coverage for the Lawsuit.

49. A true and correct copy of this letter is attached as Exhibit 10.

50. The four bases upon which AOI denied coverage are: (1) the Policy's knowing violation of rights of others provision; (2) the infringement of copyright, patent, trademark, or trade secret provision; (3) the unauthorized use of another's name or product provision; and (4) prejudice to AOI resulting from lack of timely notice of the Lawsuit.

51. In regard to the prejudice issue, the only identified prejudice was the assertion that AOI's access to facts, documents, and information was restricted, and that AOI was not given the opportunity to select defense counsel.

52. Castle responded to AOI's letter on June 5, 2023.

53. A true and correct copy of this letter is attached as Exhibit 11.

54. In the letter, Castle provided a detailed explanation with numerous citations to case law regarding why the positions taken by AOI were incorrect as a matter of Utah law.

55. Castle further quoted numerous allegations from the Amended Complaint covered by the Policy.

56. Castle further requested that AOI identify what facts, documents and information AOI contends it was deprived of, and offered to provide them.

57. Castle further requested that AOI identify the acts and omissions in the defense of the Lawsuit that AOI contended caused it prejudice.

58. Castle requested that AOI modify its coverage position to provide a defense for the Lawsuit.

59. On July 12, 2023 (after Castle had granted AOI multiple extensions to the time required for its response under Utah law), AOI responded to Castle's letter.

60. A true and correct copy of this letter is attached as Exhibit 12 hereto.

61. AOI's letter reiterated the same four bases of its prior denial and refused to provide a defense.

62. AOI did not identify a single fact, document, or other information in response to Castle's request that it identify how it was prejudiced by late notice.

63. AOI did not identify any act or omission in Castle's defense of the Lawsuit that it claimed caused it prejudice, and even admitted that Castle's attorneys in the Lawsuit were likely competent and sufficiently represented Castle in the Lawsuit.

64. AOI refused to provide Castle a defense and to date has not participated in, defended, or reimbursed Castle for its defense of, the Lawsuit.

### FIRST CAUSE OF ACTION
**(Breach of Contract)**

65. Plaintiffs incorporate the allegations of the preceding paragraphs.

66. The Policy constitutes an enforceable contract between the Plaintiffs and AOI.

67. Plaintiffs did what the contract required them to do, or were excused from performance, or any breach of the Policy was not material as a matter of law because it did not result in prejudice to AOI.

68.     Although the claim triggers coverage under the Policy, AOI has refused to defend or indemnify the Plaintiffs.

69.     Plaintiffs have been damaged by AOI's breach in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Breach of Covenant of Good Faith and Fair Dealing)

70.     Plaintiffs incorporate the allegations of the preceding paragraphs.

71.     By entering the Policy and accepting premiums from the Plaintiffs, AOI agreed to act in good faith and deal fairly with Plaintiffs as it relates to claimants seeking damages against Plaintiffs arising from incidents covered by the Policy.

72.     Without a reasonable basis for doing so, AOI failed and refused to act in good faith and deal fairly with the Plaintiffs.

73.     AOI sells its insurance policies to provide peace of mind and financial security to its insureds and knew or should have known that failure to provide coverage as agreed would reasonably foreseeably result in emotional and financial trauma.

74.     By reason of the relationship between Plaintiffs and AOI created by the Policy, AOI assumed a fiduciary obligation to protect Plaintiffs and agreed to abide by these fiduciary duties.

75.     AOI engaged in the course of conduct to further its own economic interest and in violation of contractual and legal obligations, including fiduciary duties, to the Plaintiffs, including but not limited to:

    a.     Wrongfully informing the Plaintiffs that the Litigation was not covered;

    b.     Refusing to defend Plaintiffs in the Litigation;

    c.    Unreasonably delaying its response to Plaintiffs' insurance claim;

    d.    Delaying and/or failing to investigate the allegations in the Litigation as they relate to the Policy;

    e.    Performing an improper and unreasonable investigation into the claims in the Litigation;

    f.    Knowingly committing actions and omissions inconsistent with Utah law or committing them with such frequency as to indicate a general practice of unfair insurance practices;

    g.    Failing to acknowledge and act promptly upon notice of the Plaintiffs' claims; and

    h.    Refusing to timely respond to the Plaintiffs' coverage communications and requests as required by Utah law and its fiduciary duties.

76.    AOI pursued said course of conduct intentionally, maliciously, and in conscious disregard of the rights of Plaintiffs, fraudulently, and/or with reckless disregard of the circumstances of the Plaintiffs and the likelihood of causing Plaintiffs emotional and mental distress, and/or at all times to further its own economic interest at the expense of the Plaintiffs' economic interest, mental health and well-being. As a direct and proximate result of the conduct of AOI, Plaintiffs have suffered financial exposure and loss, attorney's fees, anxiety, worry, mental and emotional stress and other damages, all to their special and general damages in an amount not yet determined, for which AOI is liable, together with attorney's fees and litigation expenses incurred in pursuing their claims herein and because of AOI's stubbornly litigious nature.

77. AOI pursued an outrageous course of conduct, intentionally and/or recklessly, proximately causing Plaintiffs emotional and physical distress, shock, and other painful emotions, for which AOI is liable.

78. In order to deter such conduct of AOI in the future and prevent repetition thereof as a practice, by way of punishment, and as an example, Plaintiffs pray that exemplary and punitive damages be awarded according to proof at the time of trial for their reckless, willful and wanton conduct and their indifference towards Plaintiffs.

### THIRD CAUSE OF ACTION
### (Tort of Bad Faith)

79. Plaintiffs incorporate the allegations of the preceding paragraphs.

80. By entering into the Policy and accepting premiums from Plaintiffs, AOI was charged with the legal tort duty to act in good faith and deal fairly with Plaintiffs as it concerns all claimants seeking damages from them arising from incidents covered by the Policy.

81. AOI refused to reasonably and timely respond to and/or accept the demands made in relation to the Litigation.

82. AOI pursued said course of conduct intentionally, maliciously, oppressively, in conscious disregard of the rights of Plaintiffs, fraudulently, in constructive fraud and/or with reckless disregard of the likelihood of causing Plaintiffs emotional and mental trauma, and/or at all times to further its own economic interests at the risk of its insured's mental health and well-being.

83. As a result of AOI's breach of these tort duties, Plaintiffs have suffered the damages as stated above and are entitled to recover all damages, including exemplary damages and punitive damages as set forth above.

## FOURTH CAUSE OF ACTION
### (Breach of Fiduciary Duty)

84. Plaintiffs incorporate the allegations of the preceding paragraphs.

85. By reason of the relationship between Plaintiffs and AOI created by the contract of insurance and by law, AOI assumed a fiduciary obligation to protect Plaintiffs and agreed to abide by these fiduciary duties. Nevertheless, AOI engaged in a course of conduct to further its own economic interest and in violation of and in conflict with its fiduciary duty to Plaintiffs, including, but not limited to:

    a. Wrongfully informing Plaintiffs that the Litigation was not covered;

    b. Refusing to defend Plaintiffs in the Litigation;

    c. Unreasonably delaying its response to Plaintiffs' insurance claim;

    d. Delaying and/or failing to investigate the allegations in the Litigation as they relate to the Policy;

    e. Performing an improper and unreasonable investigation into the claims in the Litigation;

    f. Knowingly committing actions and omissions inconsistent with Utah law or committing them with such frequency as to indicate a general practice of unfair insurance practices;

    g. Failing to acknowledge and act promptly upon notice of claims brought against Plaintiffs; and

    h. Refusing to timely respond to Plaintiffs' coverage communications and requests as required by Utah law and its fiduciary duties.

86. AOI pursued said course of conduct intentionally, maliciously, and in conscious disregard of the rights of Plaintiffs, fraudulently, and/or with reckless disregard of the circumstances of Plaintiffs and the likelihood of causing Plaintiffs emotional and mental distress, and/or at all times to further its own economic interest at the expense of Plaintiffs' economic interest, mental health and well-being. As a direct and proximate result of the conduct of AOI, Plaintiffs have suffered financial exposure and loss, attorney's fees, anxiety, worry, mental and emotional stress and other damages, all to their special and general damages in an amount not yet determined, for which AOI is liable, together with attorney's fees and litigation expenses incurred in pursuing their claims herein and because of AOI's stubbornly litigious nature.

87. AOI pursued an outrageous course of conduct, intentionally and/or recklessly, proximately causing Plaintiffs emotional and physical distress, shock, and other painful emotions, for which AOI is liable.

88. In order to deter such conduct of AOI in the future and prevent repetition thereof as a practice, by way of punishment, and as an example, Plaintiffs pray that exemplary and punitive damages be awarded according to proof at the time of trial for their reckless, willful and wanton conduct and their indifference towards Plaintiffs.

WHEREFORE, Plaintiffs pay for judgment as follows:

1. For all of the contractual benefits owing under the Policy;

2. For economic, noneconomic and consequential damages as proven at the time of trial;

3. For exemplary and punitive damages as established at the time of trial;

4. For reasonable attorney's fees, costs and expenses of litigation, as determined at the time of trial;

5. For interest; and

6. For such other and further relief as the Court may deem just and proper under the circumstances.

## JURY DEMAND

Plaintiffs hereby demand trial by jury in this action.

DATED this 6th day of September, 2023.

                        PARR BROWN GEE & LOVELESS, P.C.

                        By: /s/ Michael S. Wilde
                            Michael S. Wilde
                            Jonathan O. Hafen
                            Victoria R. Luman
                            W. Ash McMurray

                            *Attorneys for Plaintiff*