IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MOUNTAINVILLE COMMERCE, LLC, et al.,<br><br>            Plaintiffs,<br><br>v.<br><br>AUTO-OWNERS INSURANCE COMPANY,<br><br>            Defendant. | MEMORANDUM DECISION AND ORDER GRANTING IN PART [23] PLAINTIFF'S SHORT FORM DISCOVERY MOTION<br><br>Case No. 2:23-cv-00700-AMA-CMR<br><br>District Judge Ann Marie McIff Allen<br>Magistrate Judge Cecilia M. Romero |

This matter is referred to the undersigned in accordance with 28 U.S.C. § 636(b)(1)(A) (ECF 9). Before the court is Plaintiff Mountainville Commerce, LLC's (Plaintiff) Short Form Discovery Motion (Motion) (ECF 23) requesting an order compelling the production of documents in response to Plaintiff's Request for Production No. 1.[1] The court considered Defendant Auto-Owners Insurance Company's (Defendant) response (ECF 24), and Plaintiff's reply (ECF 32). The court heard oral argument on the Motion at a hearing on June 27, 2024 (ECF 37), and the court has considered the supplemental briefs submitted after the hearing by both Defendant (ECF 39) and Plaintiff (ECF 40). Having carefully considered the relevant filings, case law, and oral argument, the court GRANTS IN PART Plaintiff's Motion.

I. BACKGROUND

Plaintiff is a game company and, in May 2022, was sued by a competitor alleging that Plaintiff "copied its trade dress in marketing and otherwise copied marketing ideas" (ECF 23 at

---

[1] The request at issue states: "REQUEST FOR PRODUCTION NO. 1: A copy of [Defendant's] claims file relating to the CLAIM" (ECF 23-1 at 9).

1

1). Thereafter, Plaintiff sought insurance coverage under its policy with Defendant, which Plaintiff alleges "provided advertising injury liability coverage" (*id.* at 2). According to Plaintiff, Defendant "wrongfully denied the claim," prompting Plaintiff to file the present action (*id.*). Originally, the Complaint was filed in Utah County District Court "[o]n or about September 6, 2023" (ECF 1 at 2). On October 3, 2023, Defendant sought and was granted removal of this matter to federal court under 28 U.S.C. § 1441 on the basis that this court has diversity jurisdiction over the litigation pursuant to U.S.C. § 1332(a)(1) (*id.*).

After the matter was removed, Plaintiff submitted its discovery requests which included Production No. 1 (ECF 23-1 at 9). Production No. 1 sought a copy of Defendant's claims file relating to the claim at issue (*id.*). While Defendant provided responsive documents to Plaintiff's request, Plaintiff indicates that the documents were "heavily redacted;" thus, Defendant's "claims file reveals next to nothing about [Defendant's] adjustment and handling of the insurance claim" (ECF 23 at 2). Plaintiff objects to the redaction of these documents because "[v]irtually all substantive information about why [Defendant] denied the claim is redacted as privileged communications to or from [Defendant's] coverage counsel" (*id.*). Accordingly, Plaintiff requests that the court order Defendant to produce an unredacted claims file with all associated documents or, at a minimum, submit those documents for *in camera* review (*id.* at 3).

In response, Defendant states that Plaintiff has theorized "without proof" that Defendant's counsel was involved in "quasi-fiduciary tasks," including the investigation of Plaintiff's claim (ECF 24 at 1–2). Defendant avers that in April 2023, one of their adjusters was assigned Plaintiff's claims and shortly thereafter contacted a representative of Plaintiff to discuss the claims in the underlying lawsuit that had been brought against Plaintiff (*id.* at 2). After reviewing the relevant documents, Defendant's adjuster submitted a report regarding Plaintiff's claim and ultimately

recommended denying coverage (*id.*). According to Defendant, it was only after it completed its own investigation of Plaintiff's claim that it decided to retain "outside coverage counsel to provide legal advice regarding [Defendant's] obligations under the policy" (*id.*). These communications with counsel, according to Defendant, are protected by attorney-client privilege and are precisely the information that Plaintiff seeks in its Motion (*id.*). Moreover, Defendant states that the work product doctrine also protects these documents from discovery and need only be produced if Plaintiff can demonstrate a substantial need for the information (*id.* at 3). Because Plaintiff "cannot demonstrate a substantial need for [Defendant's] counsel's legal research and advice thereof," Defendant argues the relevant documents should remain redacted (*id.*). For those reasons, Defendant requests that the Motion be denied.

On June 27, 2024, the court held a hearing on the Motion, during which the court directed Defendant to file a supplemental brief addressing "the claim file production issue under attorney-client privilege" and to produce the unredacted documents for *in camera* review (ECF 37). The court also gave Plaintiff an opportunity to respond to Defendant's supplemental brief (*id.*). Defendant took the opportunity to file a supplemental brief (ECF 39), as did Plaintiff (ECF 40).

In its supplemental brief, Defendant argues that it "would never be entitled to Plaintiffs' communications with their attorneys, and there is no reason for the rule not to apply to [Defendant]" (ECF 39 at 2). Defendant further points out that "state law supplies the rule of decision on attorney-client privilege in diversity cases," and Utah's attorney-client privilege law therefore applies (*id.*). Related to the current situation, Defendant states that "[t]here does not appear to be a clear binding decision from a Utah state court deciding whether a coverage opinion is a privileged attorney-client or work-product communication" (*id.* at 3). But Defendant believes that the Utah Supreme Court's decision in *Fire Insurance Exchange v. Oltmanns*, 416 P.3d 1148

(Utah 2018) demonstrates that the court would "likely hold that coverage opinions are attorney-client privileged communications" (ECF 39 at 3). Furthermore, Defendant argues that surrounding jurisdictions have reached similar outcomes and encourages this court to do the same (*id.* at 4). In Defendant's view, this would lead to the conclusion the "work-product and attorney-client privilege protects the discussions and communications about how to prepare for litigation" after Plaintiff disputed Defendant's coverage position that Defendant took based on the advice of legal counsel (*id.* at 4–6). Furthermore, in relying on Federal Rule of Civil Procedure 26, Defendant states that work product covers "documents and tangible things prepared in anticipation of litigation . . . by or for another party or his representative . . . unless the party seeking discovery can show both a substantial need for the materials, and that he is unable, without undue hardship, to obtain the substantial equivalent of the materials by other means" (*id.* at 3) (quoting Fed. R. Civ. P. 26(b)(3)). According to Defendant the information sought falls directly within this definition of work product and is therefore not discoverable by Plaintiff.

In Plaintiff's supplemental brief, it first takes issue with what it characterizes as Defendant's "attempt to take another bite at the work-product apple" (ECF 40 at 2). Plaintiff points to the minute entry from the June 2024 hearing (*see* ECF 37) and argues that the court only directed the parties to address "the claim file production issue under *attorney-client privilege*" and the court should therefore ignore Defendant's arguments related to work-product (ECF 40 at 2) (emphasis added). As for the attorney-client privilege, Plaintiff asserts that it is entitled to review the unredacted documents because Defendant acted as Plaintiff's liability insurer and, as such, owed Plaintiff "a fiduciary duty to protect its interests 'as zealously as it would its own,' and to diligently investigate and act fairly and reasonably in evaluating its claim" (ECF 40 at 4) (quoting *Black v. Allstate Ins. Co.*, 100 P.3d 1163 (Utah 2004)).

4

Plaintiff further maintains that other jurisdictions have similarly held "that neither work product nor attorney-client privilege protects an insurer's investigatory file before a final claims decision has been made" (ECF 40 at 4). In particular, Plaintiff relies on *Barela v. Safeco Insurance Co. of America*, 2014 WL 11497826 (D.N.M. Aug. 22, 2014), and the acknowledgment therein that "courts have routinely applied a rebuttable presumption that neither attorney work product nor attorney-client privilege protects an insurer's investigatory file on an insured's claim from discovery before a final decision is made as to that claim." *Id.* at *4 (quoting *AKH Co. v. Universal Underwriters Ins. Co.*, 300 F.R.D. 684, 688 (D. Kan. 2014)); *see also Lindley v. Life Invs. Ins. Co. of Am.*, 267 F.R.D. 382, 399 (N.D. Okla. 2010)). According to Plaintiff, the cases relied on by Defendant are inapposite to the present issues before the court (*id.* at 6). For those reasons, Plaintiff requests that the court order Defendant to produce its claims file unredacted (*id.*).

## II. LEGAL STANDARD

The general scope of discovery encompasses "any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). "The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance." *Doe v. Intermountain Health Care, Inc.*, No. 2:18-cv-807-RJS-JCB, 2021 WL 425117, at *2 (D. Utah Feb. 8, 2021). "Rule 501 of the Federal Rules of Evidence provides that state law supplies the rule of decision on privilege in diversity cases." *Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 699 (10th Cir. 1998); *see* Fed. R. Evid. 501. Utah law thus controls the court on the attorney-client privilege issue. Under Utah law, "the mere existence of an attorney-client relationship 'does not ipso facto make all communications between them confidential.'" *S. Utah Wilderness All. v. Automated Geographic Reference Ctr., Div. of Info. Tech.*, 200 P.3d 643, 655 (Utah 2008) (quoting *Gold Standard, Inc. v. Am. Barrick Res. Corp.*, 801

5

P.2d 909, 911 (Utah 1990)). Accordingly, for a party to rely on the attorney-client privilege, they must show: "(1) an attorney-client relationship, (2) the transfer of confidential information, and (3) the purpose of the transfer was to obtain legal advice." *S. Utah Wilderness All.*, 200 P.3d at 655.

"Unlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3) . . . ." *Frontier Ref.*, 136 F.3d at 702 n.10 (quoting *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988)). This doctrine protects "written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties." *Christensen v. Am. Fam. Mut. Ins. Co.*, No. 1:09-cv-94 TS, 2011 WL 3841293, at *3 (D. Utah Aug. 29, 2011) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)). Written materials fall under this protection if the following are met: "(1) the material must be documents and tangible things otherwise discoverable, (2) prepared in anticipation of litigation or for trial, (3) by or for another party or by or for that party's representative." *Christensen*, 2011 WL 3841293, at *3 (quoting *Gold Standard*, 805 P.2d at 168). "However, even when all three criteria are met, the privilege will not prevent disclosure if the party seeking discovery can demonstrate that the information is necessary to its case and that it cannot otherwise be obtained without substantial hardship." *Christensen*, 2011 WL 3841293, at *3.

Regardless of whether attorney-client privilege or the work product doctrine is being asserted, it is the party attempting to bar discovery based on that privilege or doctrine that carries the burden "of establishing that either or both is applicable." *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984) (quoting *Barclays-american Corp. v. Kane*, 746 F.2d 653, 656 (10th Cir. 1984)).

## III. DISCUSSION

### A. Attorney-Client Privilege

The court begins with the attorney-client privilege. As previously noted, it is the party attempting to bar discovery based on the attorney-client privilege that must show: "(1) an attorney-client relationship, (2) the transfer of confidential information, and (3) the purpose of the transfer was to obtain legal advice." *S. Utah Wilderness All.*, 200 P.3d at 655.

In support of its position, Defendant relies on Justice Durham's concurrence from *Fire Insurance Exchange v. Oltmanns*, 416 P.3d 1148, 1167 (Utah 2018) (ECF 39 at 3). According to Defendant, *Oltmanns* suggests "the Utah Supreme Court show that they are likely to hold that coverage opinions are attorney-client privileged communications" (*id.*). But the opinion from *Oltmanns* is of limited applicability or relevance to the matter at hand as it contains no discussion of attorney-client privilege or the work product doctrine. *See generally*, 416 P.3d 1148. Moreover, the court finds it need not rely on the potential implications that may or may not be contained in the case provided by Defendant where there is a case from this court, applying Utah law, that is directly on point.

In *Christensen v. American Family Insurance Co.*, No. 1:09-cv-94-TS, 2011 WL 3841293 (D. Utah Aug. 29, 2011), an insured attempted to obtain, through discovery, nearly all of their claim file. *Id.* at *1. Similar to this matter, the defendant insurance company withheld portions of the relevant documents under claims of attorney-client privilege and work product. *Id.* In applying Utah law, the court determined that the insurance company had failed to carry its burden of establishing "that the entirety of these documents contain confidential information." *Id.* at *4. The court specifically found that the disputed documents contained both legal advice from counsel and factual information. *Id.* Accordingly, the court determined that "[t]he fact of the communications

7

and the factual information are not attorney-client privileged." *Id.* The court then went through the relevant documents and determined that the only information that would remain redacted were those that contained counsel's opinions and legal advice related to the claim. *Id.*

This court also finds the principles set forth in the *Barela* case, relied on by Plaintiff, applicable to the present situation particularly where it addresses a discovery dispute between an insured and an insurer. *See* 2014 WL 11497826, at *2–3. In *Barela*, the plaintiff sought information related to the claims file, and the defendant insurance company stated that the plaintiff was "not entitled to documents after the filing of the lawsuit as they contain information protected by attorney client and work product privileges." *Id.* at *4. One principle of particular note relied on by the court is that there is a rebuttable presumption "that neither attorney work product nor attorney-client privilege protects an insurer's investigatory file on an insured's claim from discovery before a final decision is made as to that claim." *Id.* (quoting *AKH*, 300 F.R.D. at 688).

Regarding the documents at issue, after an *in camera* inspection, the court notes that many of the communications are factual in nature and contain no legal advice from counsel. By way of example, factual information is redacted on contact numbers which is, consistent with the *Christensen* case, background factual information not subject to protection. In applying the relevant law, the court agrees with Plaintiff that various portions of the claims file should not have been redacted and, in particular, the information from the file that predates Defendant's final decision on Plaintiff's claim. But the portions of the file that strictly contain the opinions and advice of Defendant's counsel should remain redacted.

For the foregoing reasons, the court determines that the information that should remain redacted are those communications that contain counsel's opinions and other related information consistent with the court's ruling in *Christensen*. *See* 2011 WL 3841293, at *4.

### B. Work Product Doctrine

Next, the court turns to the work product doctrine. "As with assertion of attorney-client privilege, the applicability of attorney work product must be demonstrated by the party asserting the privilege." *Christensen*, 2011 WL 3841293, at *4. The burden is therefore on Defendant to establish that the relevant documents are protected by the work product doctrine.

"The fact that a party anticipates litigation does not make *all* documents thereafter generated by or for its attorney automatically protected under the work-product doctrine." *Kannaday v. Ball*, 292 F.R.D. 640, 649 (D. Kan. 2013). "It is settled law that a document prepared in the ordinary course of business will not be protected even if the party is aware that the document might also be useful in the event of litigation." *Fortson v. Garrison Prop. & Cas. Ins. Co.*, No. 2:21-MC-00588, 2022 WL 111068, at *1 n.3 (D. Utah Jan. 12, 2022); *see also Barela*, 2014 WL 11497826 at *4 (noting that, in determining whether the work product doctrine applies, the proper focus is on "whether specific materials were prepared in the ordinary course of business, or were principally prompted by the prospect of litigation" (quoting 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2024 (3d ed.))). Accordingly, where a party claims a document is protected as work product they must still "demonstrate the document was prepared principally or exclusively to assist in anticipated or ongoing litigation and establish the underlying nexus between the preparation of the document and the specific litigation." *Kannaday*, 292 F.R.D. at 649.

In objecting to Plaintiff's Motion on the grounds of work product doctrine, Defendant argues that Plaintiff "cannot demonstrate a substantial need for [Defendant's] counsel's legal research and advice thereof" (ECF 24 at 3). While it is true that where the work product criteria are met, the information may only be disclosed "if the party seeking discovery can demonstrate

9

that the information is necessary to its case and that it cannot otherwise be obtained without substantial hardship," *see Christensen*, 2011 WL 3841293, at *3, but the court is not convinced that Defendant has shown the doctrine applies to the redacted materials. Similar to the defendant in *Christensen*, "[Defendant's] claims of work-product privilege involve little more than assertions that the documents in question were created in anticipation of litigation." *Id.* at *4. Simply because Defendant thought that denial of a claim might lead to litigation at some point is not a sufficient basis to find that the work product doctrine applies. As this court has noted, "[b]ecause an insurer must evaluate claims (and every claim has the potential to come to litigation with the claimant and even with the insurer) it is not possible to grant work-product privilege protection to all insurer claim analysis." *Id.* While a document might contain "mental impressions, conclusions, opinions, or legal theories made in the course of [an insurance company's] counsel's claim analysis"—meaning they would be protected by attorney-client privilege—that does not mean the document can be protected by the work product doctrine. *Id.* at *5. Such documents would only be protected if they were created in preparation for trial and, here, Defendant has not made such a showing.

For the foregoing reasons, the court determines that the work product doctrine does not apply to the documents at issue.

## IV. CONCLUSION & ORDER

Accordingly, Plaintiff's Short Form Discovery Motion to Compel Production of Documents in Response to Plaintiff's Request for Production No. 1 (ECF 23) is GRANTED IN PART. Defendant is HEREBY ORDERED to provide new versions of the relevant documents, within ten (10) days after entry of this ruling, with only the advice and opinions of legal counsel redacted in a manner consistent with the court's ruling in *Christensen v. American Family Mutual Ins. Co.*, No. 1:09-cv-94 TS, 2011 WL 3841293 (D. Utah Aug. 29, 2011).

IT IS SO ORDERED.

DATED this 26 November 2024.

_____
Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah