# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MOUNTAINVILLE COMMERCE, LLC; IAN BOGGESS; BART BOGGESS; JERRY BOGGESS,<br><br>*Plaintiffs*,<br><br>v.<br><br>AUTO-OWNERS INSURANCE COMPANY,<br><br>*Defendant*. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 2:23-cv-00700-AMA-CMR<br><br>District Judge Ann Marie McIff Allen<br><br>Magistrate Judge Cecilia M. Romero |

Before the Court are Defendant's Motion for Summary Judgment ("Defendant's MSJ") and Plaintiffs' Motion for Partial Summary Judgment ("Plaintiffs' MSJ").[1] Having reviewed the parties' briefing, the record, and the law, the Court DENIES Defendant's MSJ and GRANTS Plaintiffs' MSJ on the breach of contract cause of action for the following reasons.

## I. BACKGROUND

Plaintiffs Mountainville Commerce, LLC dba Castlesquares, and its members, Ian Boggess and Bart Boggess ("Castle") market and sell a recreational game called 9-square.[2] 9-square is similar to the school-ground game 4-square but there are nine

---

[1] Docket No. 2:23-cv-00700, Defendant's Motion for Summary Judgment ("Def. MSJ"), ECF No. 43; Plaintiffs' Motion for Partial Summary Judgment ("Pl. MSJ"), ECF No. 22.

[2] Pl. MSJ, ECF No. 22, at 2.

squares elevated in the air and the ball is passed above the squares.[3] Defendant Auto-Owners Insurance Company ("AOI") is an insurance company based in Michigan.[4]

Castle executed with AOI a $1,000,000 commercial liability insurance policy (the "Policy")[5] and renewed it throughout the relevant period.[6] The Policy covers "advertising injuries" arising from third-party lawsuits but carves out several exclusions from its duty to defend these injuries.[7] It requires claimants to notify AOI of pending suits "as soon as practicable."[8] It also covers members of a limited liability company and "volunteer workers."[9]

On May 19, 2022, Castle and Plaintiff Jerry Boggess, Ian Boggess' grandfather, were sued ("Underlying Suit") by a third-party, 9 Square in the Air ("9SITA").[10] 9SITA alleged, among other things, that Castle intentionally used 9SITA's 9-square design, trade name, and other intellectual property in its advertising.[11] 9SITA claimed that it contacted Castle several times to cease and desist using its

---

[3] *Id.*

[4] Def. Answer, ECF No. 7, at 1 n.1.

[5] Pl. Exhibit 4, ECF No. 22-6 (the relevant policy for year 2022-23) [hereinafter The Policy].

[6] The Policy, ECF No. 22-6, at 122; Pl. MSJ, ECF No. 22, at 3-4 ¶¶ 1-2; AOI's Response to Plaintiffs' Motion for Partial Summary Judgment ("Def. Response"), ECF No. 29, at 6 ¶¶ 1-2; *see generally* Pl. Exhibits 2-4, ECF Nos. 22-4, 22-5, 22-6 (the Policy for years 2020-21, 2021-22, 2022-23).

[7] *Id.* at 122-23.

[8] *Id.* at 127.

[9] *Id.* at 125.

[10] Pl. MSJ, ECF No. 22, at 4 ¶ 3; Def. Response, ECF No. 29, at 6 ¶ 3; *see generally* Pl. Exhibit 5 ("Amended Complaint"), ECF No. 22-5 (listing the allegations and claims).

[11] *See generally* Am. Compl., ECF No. 22-7 (listing the allegations and claims).

trademarked name and product.[12] On March 14, 2023, 9SITA filed an Amended Complaint.[13]

On or around April 24, 2023, Castle filed a claim with AOI under the Policy to defend and indemnify them.[14] AOI refused to defend the suit, asserting that the claim fell under three Policy exclusions and was otherwise untimely.[15] Castle then requested reconsideration which AOI denied.[16]

On September 6, 2023, Castle sued AOI in state court for breach of contract, breach of the covenant of good faith and fair dealing, bad faith, and breach of fiduciary duty.[17] AOI removed the action to this Court based on diversity jurisdiction.[18] Castle moved for summary judgment on the breach of contract claim.[19] AOI also moved for summary judgment on all claims, or alternatively, on the breach of the duty of good faith and fair dealing claim.[20] The motions are fully briefed.[21] The case has been stayed until Castle's MSJ on the breach of contract claim is resolved.[22]

---

[12] Am. Compl., ECF No. 22-7, at 13 ¶¶ 54-56; Def. MSJ, ECF No. 43, at 7 UMF 2; Plaintiffs' Opposition to Defendant's Motion for Summary Judgment ("Pl. Opp'n"), ECF No. 45, at 5; Def. Exhibits A, B, C ("9SITA Cease-and-Desist Requests"), ECF Nos. 43-1, 43-2, 43-3, 43-4.

[13] Pl. MSJ, ECF No. 22, at 4 ¶ 3; Def. Response, ECF No. 29, at 6 ¶ 3; Am. Compl., ECF No. 22-5.

[14] Pl. MSJ, ECF No. 22, at 6 ¶ 6; Def. Response, ECF No. 29, at 7 ¶ 6.

[15] Pl. MSJ, ECF No. 22, at 6 ¶ 7; Def. Response, ECF No. 29, at 7 ¶ 7; Pl. Exhibit 8 ("Declination Letter"), ECF No. 22-10.

[16] Pl. MSJ, ECF No. 22, at 6 ¶¶ 9-11; Def. Response, ECF No. 29, at 7 ¶¶ 9-11; Pl. Exhibit 9 ("Pl. Letter Response"), ECF No. 22-11; Pl. Exhibit 10 ("Supplemental Declination Letter"), ECF No. 22-12.

[17] Compl., ECF No. 1-1, at 8-13.

[18] Notice of Removal, ECF No. 1.

[19] Pl. MSJ, ECF No. 22.

[20] Def. MSJ, ECF No. 43.

[21] Def. Response, ECF No. 29; Pl. Reply, ECF No. 31; Pl. Opp'n ECF No. 45; Def. Reply, ECF No. 51.

[22] Docket Text Order, ECF No. 50.

## II. The Law

### A) Rule 56 Motion for Summary Judgment

A court must grant summary judgment as a matter of law "if the movant shows that there is no genuine dispute as to any material fact" regarding the claim. FED. R. CIV. P. 56(a). The initial burden thus falls on the movant to show an absence of genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If this is met, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

In considering a motion for summary judgment, a court must view the facts and draw all justifiable inferences in a light most favorable to the nonmoving party. *Id.* at 255. "Cross motions for summary judgment are treated separately; the denial of one does not require the grant of another." *U.S. Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1324 (10th Cir. 2010).

### B) The Duty to Defend

Utah law requires a court to analyze an insurer's duty to defend under the "eight corners" rule. *Banner Bank v. First American Title Ins. Co.*, 916 F.3d 1323, 1326-27 (10th Cir. 2019). That is, "the court analyzes only what is contained within the four corners of the policy and the four corners of the complaint." *Id.* (citing *Equine Assisted Growth & Learning Ass'n v. Carolina Cas. Ins. Co.*, 266 P.3d 733, 735–37 (Utah 2011)). "A court looks first to the policy language defining the scope of the duty

4

to defend; it then looks to the face of the complaint and determines if the terms either establish or eliminate a duty to defend." *Id.*

The duty to defend arises "when the insurer ascertains facts giving rise to potential liability under the insurance policy." *Sharon Steel Corp. v. Aetna Cas. & Sur.*, 931 P.2d 127, 133 (Utah 1997). If "there is no potential liability [under the policy], then there is no duty to defend." *Deseret Fed. Sav. v. U.S. Fid. & Guar.*, 714 P.2d 1143, 1147 (Utah 1986). "If even one claim or allegation triggers the duty to defend, the insurer must defend all claims (that is, covered and non-covered claims), at least until the suit is limited to the non-covered claims." *Ohio Cas. Ins. Co. v. Cloud Nine, LLC*, 464 F.Supp.2d 1161, 1166 (D. Utah 2006) (citing *Benjamin v. Amica Mut. Ins. Co.*, 140 P.3d 1210, 1216 (Utah 2006)). "Finally, and perhaps most important: 'When in doubt, defend.'" *Id.* (*Benjamin*, 140 P.3d at 1215).

## C) Insurance Contract Construction

Under Utah law, insurance contracts are to be interpreted using the same rules applied to interpreting ordinary contracts. *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993). "Courts interpret words in insurance policies according to their usually accepted meanings and in light of the insurance policy as a whole." *Utah Farm Bureau Ins. Co. v. Crook*, 980 P.2d 685, 686 (Utah 1999). "[I]t is axiomatic that a contract should be interpreted so as to harmonize all of its provisions and all of its terms, which terms should be given effect if it is possible to do so." *Brigham Young Univ. v. Lumbermens Mut. Cas. Co.*, 965 F.2d 830, 835 (10th Cir. 1992) (alteration in original) (quoting *LDS Hosp. v. Capitol Life Ins. Co.*, 765 P.2d 857, 858 (Utah 1988)).

Utah courts also "construe insurance contracts by considering their meaning 'to a person of ordinary intelligence and understanding.'" *Doctors' Co. v. Drezga*, 218 P.3d 598, 603 (Utah 2009) (quoting *LDS Hosp.*, 765 P.2d at 858); *see, e.g., Lopez v. United Auto. Ins. Co.*, 274 P.3d 897, 901 (Utah 2012) ("An ordinary person reading the phrase 'reasonable explanation' would understand it to mean the provision of a

proper amount of information to allow one to understand a concept."). "Because insurance policies are intended for sale to the public, the language of an insurance contract must be interpreted and construed as an ordinary purchaser of insurance would understand it." *U.S. Fid. & Guar. Co. v. Sandt*, 854 P.2d 519, 523 (Utah 1993); *see also id.* at 525 (holding that "[t]he ordinary purchaser of insurance would understand that [the insurer] is liable up to the 'maximum limit' shown on the schedule" when the contract indicates that the "limit of liability" is the insurer's "maximum liability").

"If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *Green River Canal Co. v. Thayn*, 84 P.3d 1134, 1141 (Utah 2003) (quoting *WebBank v. Am. Gen. Annuity Svc. Corp.*, 54 P.3d 1139, 1145 (Utah 2002)). If there is an ambiguity in a contract, the ambiguities are to be "construed against the drafter—the insurance company—and in favor of coverage." *Crook*, 980 P.2d at 687. Under Utah law, a contract is ambiguous if it is unclear, omits terms, or relies on terms that may be understood to have two or more plausible meanings. *Alf*, 850 P.2d at 1274. "[I]f an insurance contract has inconsistent provisions, one which can be construed against coverage and one which can be construed in favor of coverage, the contract should be construed in favor of coverage." *Sandt*, 854 P.2d at 523. "In general, a court may not rewrite an insurance contract for the parties if the language is clear and unambiguous." *Alf*, 850 P.2d at 1275.

*Dyno Nobel v. Steadfast Ins. Co.*, 85 F.4th 1018, 1026 (10th Cir. 2023).

## III.  ANALYSIS

For judicial economy, the Court will address both motions for summary judgment. The parties disagree on whether: (1) AOI may assert that the Amended Complaint lacked allegations of an "advertising injury;" (2) Castle's claim fell under the Policy's exclusions; (3) AOI was prejudiced by Castle's late notice; and, (4) Jerry

6

Boggess is covered under the Policy.[23] The Court will analyze each issue then turn to the ultimate question of whether AOI breached the Policy.

## A) Advertising Injury

The Policy describes the kinds of allegations that trigger AOI's duty to defend suits. One of these provisions includes suits that arise out of an "advertising injury."[24] An "advertising injury" is defined in relevant part as

> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services . . .
> f. The use of another's advertising idea in your "advertisement";
> g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".[25]

When AOI denied Castle's insurance claim, it seemingly operated under the assumption that the allegations in the Amended Complaint were covered advertising injuries that fell under certain exclusions.[26] Now AOI claims that 9SITA did not allege any advertising injuries in the Amended Complaint.[27] Castle contends that

---

[23] *See generally* Pl. MSJ, ECF No. 22; Def. Response, ECF No. 29; Def. MSJ, ECF No. 43; Pl. Opp'n, ECF No. 45.

[24] The Policy, ECF No. 22-6, at 122.

[25] *Id.* at 130.

[26] *See* Decl. Letter, ECF No. 22-10; (no suggestion that the Amended Complaint fails to allege an advertising injury); Supp. Decl. Letter, ECF No. 22-12 (same); Def. Response, ECF No. 29, at 10-11 ("For purposes of this Response, AOI does not dispute that advertising injury is a covered cause of loss under the Policy . . . Contrary to Plaintiffs' position, however, the fact that the Amended Complaint alleges advertising injury does not automatically trigger coverage for Plaintiffs' claim and 9SITA's alleged damages. The exclusions must also be considered to give full effect to the Policy as a whole . . . .").

[27] Def. MSJ, ECF No. 43, at 18-19.

AOI needed to assert that defense in the declination letter, otherwise Utah statutory law bars bringing it at this stage of the litigation.[28]

The Utah Administrative Code and Utah Code foreclose AOI's proffered defense that the Amended Complaint lacks allegations of advertising injuries. The Utah Administrative Code provides that "[a]ny basis for the denial of a claim shall be noted in the insurer's claim file and promptly communicated, in writing, to the first party claimant." Utah Admin. Code § R590-190-10(2)(d). Also, "[a]n insurer is prohibited from denying a claim on the grounds of a specific provision, condition, or exclusion unless reference to the provision, condition, or exclusion is included in the denial." Utah Admin. Code § R590-190-10(2)(e).

The plain meaning of the Utah Administrative Code commands that an insurer provide the specific reasons for denial in a declination letter. The code is clear: an insurer is "prohibited" from denying the claim without "includ[ing]" the specific provision, condition, or exclusion in the denial. Utah Admin. Code § R590-190-10(2)(e). And "[a] fundamental rule of statutory construction is that statutes are to be construed according to their plain language." *Arndt v. First Interstate Bank of Utah*, N.A., 991 P.2d 584, 586 (Utah 1999) (internal citation omitted).[29]

---

[28] Pl. Opp'n, ECF No. 45, at 7-9.

[29] Further, even under generally accepted legal definitions, the meaning of the operative verbs in the code's provisions lend to the same construction. "Prohibit" means "[t]o forbid by law [or] [t]o prevent, preclude, or severely hinder." Prohibit, Black's Law Dictionary (11th ed. 2019). And "include" means "[t]o contain as part of something." Include, Black's Law Dictionary (11th ed. 2019). Together, these definitions suggest that an insurer may not deny claims for reasons enumerated outside the declination letter.

On or around April 24, 2023, AOI received Castle's insurance claim and responded with a declination letter and a supplemental declination letter. The reasons it provided were that: (1) the allegations in the Underlying Suit fell into three exclusions under the Policy; and, (2) the claim was untimely. Nowhere in the declination letter nor in its supplement does AOI assert that it denied the claim based on lack of advertising injuries.

Moreover, assessing whether the Amended Complaint in the Underlying Suit carries claims that qualify under the Policy is a threshold inquiry AOI should have conducted prior to evaluating exclusions. Utah Code § 31A-21-105(5) ("[i]f after issuance of a policy the insurer acquires knowledge of sufficient facts to constitute a general defense to all claims under the policy, the defense is only available if the insurer notifies the insured within 60 days after acquiring the knowledge of its intention to defend against a claim if one should arise . . . .").

AOI was informed of the allegations in the Amended Complaint on or around April 24, 2023. If Castle's claim can be denied summarily now because the Amended Complaint lacked allegations of advertising injuries, it could have been denied on the same grounds then. AOI brings this allegation for the first time on September 6, 2024.[30] AOI's 60-day period is long gone.

Finally, "[w]here the facts alleged in a complaint against the insured support a recovery for an occurrence covered by the policy, even though the insurer has knowledge that the injury is not in fact so covered, it is the insurer's duty to defend

---

[30] Def. MSJ, ECF No. 43.

unless relief is obtained by way of a declaratory judgment." *State Farm Mut. Auto Ins. Co. v. Kay*, 487 P.2d 852, 854-55 (Utah 1971) *overruled on other grounds by Farmers Ins. Exchange v. Call*, 712 P.2d 231, 236 (Utah 1985). AOI did not defend the suit and did not seek declaratory judgment in the absence of clarity.

Still, AOI does not address the statutory provisions above directly in its Reply; instead AOI asserts that it included this argument in the declination letter because it stated that

> [t]he Policy precludes coverage for 'personal and advertising injury' arising out of 'the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.' *See* Policy at p. 6 of 14, ¶ 2(i). Here, Castle's actions of copying Plaintiff's patented game by creating a substantially similar game is precluded from coverage.[31]

This is unpersuasive. The provision AOI cites *is* the intellectual property exclusion under the Policy.[32] And AOI did not intend to use the provision to suggest a lack of advertising injury allegations. This is apparent from its placement in the declination letter. AOI's quote is from the declination letter section titled, "**Infringement of Copyright, Patent, Trademark or Trade Secret – Exclusion**."[33] AOI further clarified its meaning in the conclusion of that section which provides that, "any damage arising from the use, design, and sale of [Castle's] product itself is barred by the 'intellectual property' exclusion of the Policy. As such, the 'intellectual property' exclusion forms another basis for AOI's denial."[34]

---

[31] Decl. Letter, ECF No. 22-10, at 11.

[32] The Policy, ECF No. 22-6, at 123.

[33] Decl. Letter, ECF No. 22-10, at 11.

[34] *Id.* at 12.

AOI's declination letter does not claim that the Amended Complaint lacks allegations of "advertising injuries" though AOI was aware of the allegations since around April 24, 2023. It is thus "prohibited from denying [the] claim" on these grounds now. Utah Admin. Code § R590-190-10(2)(e); Utah Code § 31A-21-105(5).

## B) Policy Exclusions

AOI argues that the claim falls under three exclusions: (1) knowing violations of rights of another, (2) intellectual property right violations, (3) unauthorized use of another's name or product.[35]

### 1) *Knowing Violation of Rights of Another*

The Policy provides an exclusion for "'[p]ersonal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'"[36] Neither party disputes that there are several allegations and causes of action in the Amended Complaint of intentional conduct.[37]

The parties disagree on whether the duty to defend extends to claims that can be proven without intentional conduct.[38] AOI argues that because Castle's alleged *conduct* was knowing or intentional, it need not defend the suit regardless of the

---

[35] Def. Response, ECF No. 29, at 11-21.

[36] The Policy, ECF No. 22-6, at 122-23.

[37] Def. Response, ECF No. 29, at 2-3, 11-15; Pl. Reply, ECF No. 31, at 3-6 (not disputing that the Amended Complaint carries allegations of intentional conduct).

[38] Def. Response, ECF No. 29, at 2-3, 11-15; Pl. Reply, ECF No. 31, at 3-6 (not disputing that the Amended Complaint carries allegations of intentional conduct, arguing instead that the focus is on conduct required to prove the cause of action).

elements of the causes of action.[39] On the other hand, Castle argues that several *causes of action* do not necessitate proving intentional conduct so the duty to defend covers all the claims.[40]

"Where an insurance policy obligates an insurer to defend claims of unintentional injury, the insurer is obligated to do so until those claims are either dismissed or otherwise resolved in a manner inconsistent with the coverage." *Benjamin*, 140 P.3d at 1216. "Even where the complaint details egregious, intentional conduct, an expected injury exclusion like the one found in the [Policy] does not relieve an insurer of its duty to defend claims of unintentional injury." *Id.* This is because

> [i]nferences and assumptions about an insured's intent to injure are improper and inconsistent both with the well-accepted practice of alternative pleading and with [the Utah Supreme Court's] oft-repeated instruction that 'insurance policies should be construed liberally in favor of the insured and their beneficiaries so as to promote and not defeat the purposes of insurance.' *Id.* (internal citations omitted).

So, when a complaint alleges intentional conduct but the causes of action require only unintentional conduct, this kind of exclusion does not apply. *See id.* at 1215-16.

Several causes of action in the Amended Complaint do not require the plaintiff to prove intentional or knowing conduct. *See Sally Beauty Co., Inc. v. Beautyco, Inc.,* 304 F.3d 964, 977 (10th Cir. 2002) ("To establish a claim of **trade dress infringement**, a plaintiff must show: (1) The trade dress is inherently distinctive or has become distinctive through secondary meaning; (2) There is a likelihood of

---

[39] Def. Response, ECF No. 29, at 11-15.

[40] Pl. Reply, ECF No. 31, at 3-6.

confusion among consumers as to the source of the competing products; and (3) The trade dress is nonfunctional." (emphasis added)); *Affliction Holdings, LLC v. Utah Vap or Smoke, LLC*, 935 F.3d 1112, 1114 (10th Cir. 2019) ("Claims of **trademark infringement** require a party to establish [(1)] that it has a legal right to a mark and [(2)] that the defendant's use of a similar mark is likely to generate consumer confusion in the marketplace." (emphasis added)). Thus, this exclusion does not apply to the causes of action in their entirety in the Amended Complaint.

### 2) *Infringement of Copyright, Patent, Trademark or Trade Secret*

The Policy also provides an exclusion for "'[p]ersonal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights."[41] This exclusion has two exceptions: (1) "the use of another's advertising idea in [an] 'advertisement'" and (2) "infringement [] in [an] 'advertisement', of copyright, trade dress or slogan."[42]

AOI claims that the exceptions do not apply because 9SITA does not allege that Castle infringed on a slogan, but on a trademark.[43] However, this is only one of the causes of action alleged in the Amended Complaint. 9SITA alleged unfair competition[44] which is not "infringement of copyright, patent, trademark, trade secret or other intellectual property rights."

---

[41] The Policy, ECF No. 22-6, at 123.

[42] *Id.*

[43] Def. Response, ECF No. 29, at 18-19.

[44] Am. Compl., ECF No. 22-7, at 15-16.

9SITA also alleged that "Castle copied the distinctive and famous trade dress of the [9SITA] game . . . [and] continue[d] to use its confusingly similar trade dress . . . in connection with the sale, offering for sale, distribution, and promotion of its 9 Square Castlesquares game . . . ."[45] This plainly falls under the trade dress exception because Castle allegedly infringed on 9SITA's trade dress by advertising a similar game.

Still, AOI contends that the trade dress exception does not apply because the underlying alleged conduct was intentional or knowing.[46] But as explained before, this is not an element of trade dress infringement. *Sally Beauty Co., Inc.,* 304 F.3d at 977 ("To establish a claim of trade dress infringement, a plaintiff must show: (1) The trade dress is inherently distinctive or has become distinctive through secondary meaning; (2) There is a likelihood of confusion among consumers as to the source of the competing products; and (3) The trade dress is nonfunctional."). Therefore, the intellectual property exclusion did not preclude AOI's duty to defend the suit.

### 3) *Unauthorized Use of Another's Name or Product*

Finally, the Policy excludes coverage for "'[p]ersonal and advertising injury' arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers."[47]

---

[45] *Id.* at 14 ¶¶ 59, 62.

[46] Def. Response, ECF No. 29, at 19.

[47] The Policy, ECF No. 22-6, at 123.

AOI points to four allegations in the Amended Complaint that it argues could be construed as unauthorized use of another's name or product in an email address, domain name or metatag.[48] However, AOI does not claim its cited allegations stand as the sole support for the causes of action in the Amended Complaint. AOI similarly does not dispute that other allegations may support the causes of action. There are many allegations in the Amended Complaint that may support the relevant causes of action without Castle's "using another's name or product to mislead another's potential customers." For example, 9SITA alleged that Castle copied its game's design:

    a.  Square-shaped sections, as opposed to any other geometric shape or design;
    b.  a three-dimensional, 3x3 grid with nine squares;
    c.  a freestanding structure;
    d.  telescoping legs with the same style of push buttons that allow users to adjust the height of the game, with a larger lower section and telescoping upper section and three height levels;
    e.  a blue color for their straps or crossmembers;
    f.  later, a version that is neon and glows under blacklight with blacklight straps;
    g.  a black bag to pack the product's materials; and
    h.  the same game play and rules.[49]

9SITA also alleged that Castle "created photographs of its product to look like [9SITA's] product in the angle and feel of the pictures."[50]

Assuming 9SITA's game is distinctive and the design alone is nonfunctional, 9SITA alleged that the above facts lend to making the games "[c]onfusingly

---

[48] Def. Response, ECF No. 29, at 19-20.

[49] Am. Compl., ECF No. 22-7, at 6-7 ¶ 27.

[50] *Id.* at 7 ¶ 28.

[s]imilar."[51] If proven, these alleged facts may be sufficient for trade dress infringement because Castle's alleged advertisements showed a similar product that causes confusion as to whether 9SITA is the game's source. *See Sally Beauty Co., Inc.,* 304 F.3d at 977.

These same factual allegations may also support the unfair competition cause of action which requires only that 9SITA allege an imitation of another's product that will probably mislead the consumer. *Overstock.com, Inc. v. SmartBargains, Inc.*, 192 P.3d 858, 863 (Utah 2008); *Hi-Land Dairyman's Ass'n.*, 151 P.2d 710, 717 (Utah 1944). 9SITA alleged that the games were "confusingly similar" and caused consumer confusion. So, the trade dress infringement and unfair competition causes of action may be supported by facts alleged in the Amended Complaint without using 9SITA's name or product in its advertisement. Therefore, the "unauthorized use of another's name or product" exclusion did not cover all relevant allegations in the Amended Complaint.

"[W]hen there are covered and non-covered claims in the same lawsuit, the insurer is obligated to provide a defense to the entire suit, at least until it can limit the suit to those claims outside of the policy coverage." *Benjamin*, 140 P.3d at 1216 (internal citations omitted). Because none of the exclusions apply to all causes of action in the Amended Complaint, AOI's duty to defend under the Policy is not excused.

---

[51] *Id.* at 6.

## C) Late Notice

The Court now turns to the issue of notice. The Policy requires a claimant to "(1) [i]mmediately record the specifics of the claim or 'suit' and the date received; and (2) [n]otify [AOI] as soon as practicable."[52] It provides that the claimant "must see to it that [AOI] receive[s] written notice of the claim or 'suit' as soon as practicable."[53] The claimant also must "[i]mmediately send [AOI] copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit' . . . ."[54]

The parties do not dispute that the underlying lawsuit began on May 19, 2022, and that Castle notified AOI on or around April 24, 2023.[55] This is late notice because Castle did not notify AOI of the suit for about eleven months. However, "Utah law prevents an insurance company from relying on certain technical policy breaches as a basis for denying coverage." *State Farm Mut. Auto. Ins. v. Green*, 89 P.3d 97, 104 (Utah 2003).

Late notice alone is insufficient to relieve an insurer's duty to defend. The Utah Code requires an insurer to show that it has been prejudiced by late notice to bar a plaintiff's claim. Utah Code § 31A-21-312(2). "The question of prejudice arising from failure to provide timely notice is generally a question of fact." *F.D.I.C. v. Oldenburg*, 34 F.3d 1529, 1547 (10th Cir. 1994). It "should be evaluated in light of the purposes of notice requirements, namely to enable the insurer to investigate and take the

---

[52] The Policy, ECF No. 22-6, at 127.

[53] *Id.*

[54] *Id.*

[55] Pl. MSJ, ECF No. 22, at 6 ¶ 6; Def. Response, ECF No. 29, at 7 ¶ 6.

necessary steps to protect its interests." *Id.* Prejudice thus arises when an insurer is unable to investigate, settle, or defend a suit. *Id.*

AOI claims that it was prejudiced by untimely notice because it was: (1) restricted from access to the facts, documents, and other relevant information; (2) prevented from contemporaneously investigating the claim; (3) prevented from speaking to witnesses, (4) prevented from retaining its own defense counsel to defend Castle; and, (5) prevented from potentially resolving the claims pre-suit.[56]

However, Castle's eleven-month delay in this case is not prejudicial because the suit was still in the early stages of litigation, giving AOI plenty of time to investigate the claims, settle the suit, and oversee defense. AOI has not identified any material facts, documents, or information it was deprived of due to the late notice.[57] It has not identified any witnesses unavailable to it for deposition. It also admitted that defense counsel had "sufficiently represented Castle's rights in the [underlying] [l]awsuit."[58]

AOI's assertions that it was prejudiced because it could not conduct "contemporaneous[]" investigation and "pre-suit" settlement is equally unpersuasive. Under this standard, AOI's policy provision that requires an insured to notify of a lawsuit "as soon as practicable" would often result in prejudice even if timely because

---

[56] Def. Response, ECF No. 29, at 7 ¶ 8, 21-23; Pl. MSJ, ECF No. 22, at 6 ¶ 8; *see also* Decl. Letter, ECF No. 22-10; Supp. Decl. Letter, ECF No. 22-12, at 11.

[57] *See generally* Def. Response, ECF No. 29, at 21-23 (asserting only that Castle knew of potential allegations before the lawsuit); *see also* Decl. Letter, ECF No. 22-10 (failing to cite any particular documents, facts, etc.); Supp. Decl. Letter, ECF No. 22-12 (same).

[58] Supp. Decl. Letter, ECF No. 22-12, at 11.

there would not be an opportunity for the insurer to investigate "contemporaneously" and settle "pre-suit." This would effectively collapse the prejudice requirement, which the Court will not entertain. Therefore, AOI was not prejudiced by Castle's untimely notice and its duty to defend was triggered when it received Castle's notice.

### D) Jerry Boggess

The Policy covers "volunteer workers."[59] A volunteer worker is defined as "a person who is not [an] 'employee', and who donates his or her work and acts at the direction of and within the scope of duties determined by [the employer], and is not paid a fee, salary or other compensation by [the employer] or anyone else for their work performed for [the employer]."[60] AOI disputes whether Jerry Boggess qualified as a "volunteer worker."[61]

Castle argues that Jerry Boggess was substantively a volunteer worker under the Policy because he "provided services to Castle around the time of its formation, including consulting with Ian [Boggess] and assisting in obtaining a patent for Castle."[62] AOI does not dispute these facts. It argues instead that "[o]ne's act of assisting relatives with a task, such as obtaining a patent, does not automatically confer a duty upon the relatives' insurance company to provide that person with coverage."[63]

---

[59] The Policy, ECF No. 22-6, at 125.

[60] *Id.* at 131.

[61] Def. Response, ECF No. 29, at 26-27.

[62] Pl. MSJ, ECF No. 22, at 24; Declaration of Ian Boggess in Support of Motion for Partial Summary Judgment, ECF No. 22-1, at 3 ¶ 14.

[63] Def. Response, ECF No. 29, at 27.

Jerry Boggess helped Castle obtain a patent without compensation, though he was not Castle's employee. Jerry Boggess qualifies under AOI's volunteer worker definition because he was a non-employee of the company who donated his work at the direction of the company to create a patent for the company without compensation. If AOI is dissatisfied with its definition of a volunteer worker, it may rewrite its policy terms.

## E) Breach of Contract

The Court must now evaluate whether AOI breached the contract by failing to defend the suit. "The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *Am. W. Bank Members, L.C. v. State*, 342 P.3d 224, 230-31 (Utah 2014) (internal citation omitted).

The parties agree that there was a valid insurance policy between the parties.[64] It is also undisputed that Defendant did not defend Plaintiffs in the underlying lawsuit.[65] Castle made applicable premium payments under the Policy.[66] At least some of the allegations in the Amended Complaint are covered under the Policy as to all relevant parties with no applicable exclusions and no prejudice for late notice. *See supra* Part III.A.-D. AOI therefore has a duty to defend the Underlying Suit, which it

---

[64] The Policy, ECF No. 22-6, at 122; Pl. MSJ, ECF No. 22, at 3-4 ¶¶ 1-2; Def. Response, ECF No. 29, at 6 ¶¶ 1-2; *see generally* Pl. Exhibits 2-4, ECF Nos. 22-4, 22-5, 22-6 (the Policy for years 2020-21, 2021-22, 2022-23).

[65] Pl. MSJ, ECF No. 22, at 6 ¶¶ 7, 9-11; Def. Response, ECF No. 29, at 7 ¶¶ 7, 9-11; Decl. Letter, ECF Nos. 22-10; Supp. Decl. Letter, ECF No. 22-12.

[66] *See* Def. Response, ECF No. 29, at 2 ("At all relevant times, Mountainville was insured by AOI under a commercial general liability insurance policy [].").

did not do. This has resulted in legal fees. AOI has thus breached the contract set forth in the Policy.

## IV. CONCLUSION

There are no genuine issues of material fact as to the breach-of-contract claim. AOI has a duty to defend Castle and its volunteer worker, Jerry Boggess, in the Underlying Lawsuit with 9SITA, and untimely notice did not prejudice AOI. Castle paid its Policy premiums. AOI failed to defend Castle. Castle incurred legal fees in the Underlying Suit. AOI has breached the Policy.

## V. ORDER

For the reasons stated above, the Court DENIES Defendant's Motion for Summary Judgment, GRANTS Plaintiffs' Motion for Partial Summary Judgment, and LIFTS the STAY on the case.

SIGNED this 31st of March, 2025.

BY THE COURT:

Hon. Ann Marie McIff Allen
United States District Judge