IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **MOUNTAINVILLE COMMERCE, LLC; IAN BOGGESS; BART BOGGESS; JERRY BOGGESS,**<br><br>Plaintiffs,<br><br>v.<br><br>**AUTO-OWNERS INSURANCE COMPANY,**<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, MOTION TO CERTIFY QUESTIONS TO UTAH SUPREME COURT**<br><br>Case No. 2:23-cv-00700-AMA-CMR<br><br>District Judge Ann Marie McIff Allen<br><br>Magistrate Judge Cecilia M. Romero |

Before the Court is Defendant Auto-Owners Insurance Company's Motion for Reconsideration of Summary Judgment Order or, in the alternative, Motion to Certify Questions to Utah Supreme Court.[1] For the reasons below, the Court declines both to reconsider its decision and to certify questions to the Utah Supreme Court, and the Court thus denies Defendant's Motion.

## BACKGROUND

This action arises out of a dispute between an insurer and its insured over whether the insurer had a duty to defend the insured in an underlying lawsuit. On September 6, 2023, Plaintiffs Mountainville Commerce, LLC dba Castlesquares, and its members, Ian Boggess and Bart Boggess (collectively, "Castle"), brought suit in Utah state court against Defendant Auto-Owners Insurance Company ("AOI"), claiming breach of contract, breach of the covenant of

---

[1] ECF No. 61, filed April 29, 2025.

1

good faith and fair dealing, bad faith, and breach of fiduciary duty.[2] AOI subsequently removed the action to this Court.[3] Castle moved for summary judgment on the breach of contract claim.[4] AOI moved for summary judgment on all claims, or in the alternative, on the breach of the covenant of good faith and fair dealing claim.[5]

On March 31, 2025, the Court issued its Order granting Castle's Motion for Partial Summary Judgment and denying AOI's Motion for Summary Judgment.[6] In doing so, the Court found that AOI had a duty to defend Castle in the underlying lawsuit with 9 Square in the Air, LLC ("9SITA") and that AOI breached the Policy by failing to undertake that defense.[7] AOI now moves the Court to reconsider its Order.[8] Alternatively, AOI requests that the Court certify questions to the Utah Supreme Court.[9] For the reasons stated below, the Court denies AOI's requests.

## DISCUSSION

As a threshold matter, the Court notes that AOI's Motion is overlength in violation of DUCivR 7-1(a)(4)(D), which provides that such a motion has a limit of ten pages or 3,100 words.[10] Before filing a motion that exceeds these limitations, a party must obtain a court order authorizing the additional pages or words.[11] AOI did not seek the Court's approval before filing

---

[2] ECF No. 1, Ex. 1.
[3] ECF No. 1.
[4] ECF No. 22.
[5] ECF No. 43.
[6] ECF No. 56.
[7] *Id.* at 21.
[8] ECF No. 61.
[9] *Id.*
[10] DUCivR 7-1(a)(4)(D)(i).
[11] DUCivR 7-1(a)(7)(A).

2

its overlength Motion and has not attempted to do so retroactively. Castle asks the Court to deny the Motion for this procedural error, as the local rules provide that failure to comply may result in the Court imposing sanctions such as the denial of the motion.[12] However, as the language above denotes, the Court's imposition of sanctions under this rule is discretionary rather than mandatory. AOI claims that the extra pages were the result of an inadvertent oversight, and the Court finds any violation "to be *de minimis* and unintentional."[13] Denying the Motion on this basis would only serve to create unnecessary delay in resolving these issues such that doing so would be to the detriment of both parties. While the Court admonishes AOI to take care to comply with the procedural rules in the future, the Court will address the substance of the instant Motion.

A.  RECONSIDERATION

"The Federal Rules of Civil Procedure do not recognize a 'motion for reconsideration.'"[14] Nonetheless, "[m]otions for reconsideration filed before the entry of final judgment . . . are properly construed under Rule 54(b)[,]"[15] which provides that "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims."[16] The assessment for reconsideration under Rule 54(b) is essentially the same as it

---

[12] DUCivR 7-1(j)(2).
[13] *Bingham v. doTERRA Int'l, LLC*, No. 2:23-cv-00707-DBB-DBP, 2024 WL 1973342, at *2 (D. Utah May 3, 2024) (declining to strike impermissibly overlength motion).
[14] *Spring Creek Expl. & Prod. Co. v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1023 (10th Cir. 2018).
[15] *King v. IC Grp., Inc.*, 743 F. Supp. 3d 1346, 1351 (D. Utah 2024).
[16] Fed. R. Civ. P. 54(b).

would be for reconsideration under Rules 59(e) and 60(b).[17] "A motion to reconsider must be made upon grounds other than a mere disagreement with the court's decision and must do more than rehash a party's former arguments that were rejected by the court."[18] The relief is, instead, only appropriate in extraordinary circumstances on grounds such as the availability of new evidence, "an intervening change in the controlling law," or "the need to correct clear error or prevent manifest injustice."[19]

Much of AOI's Motion is a regurgitation of its former arguments. The Court considered these arguments carefully in connection with the motions for summary judgment. Nonetheless, the Court, in the interest of justice, will examine AOI's arguments to determine whether there has been a misunderstanding of the law or clear error committed such that reconsideration would be warranted. "[C]lear error normally requires the definite and firm conviction that a mistake has been committed based on the entire evidence, or that a particular factual determination lacks any basis in the record."[20]

1.   Utah Administrative Code R590-190

AOI contends that the Court erred in applying the 2024 version of Utah Administrative Code R590-190 rather than the previous version amended in 1999 that was in effect at the time the initial letters denying coverage were sent.[21] The Court acknowledges the principle that

---

[17] *King*, 743 F. Supp. at 1351.
[18] *Schubert v. Genzyme Corp.*, No. 2:12-cv-00587-DAK, 2013 WL 6809143, at *1 (D. Utah Dec. 20, 2013); *see Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) ("[A] motion for reconsideration . . . [is an] inappropriate vehicle[] to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion.").
[19] *Servants of Paraclete*, 204 F.3d at 1012.
[20] *King*, 743 F. Supp. at 1352.
[21] These letters are dated May 23, 2023, and July 12, 2023, respectively. ECF No. 22, Exs. 8, 10.

generally, "when adjudicating a dispute we apply the version of the statute that was in effect at the time of the events giving rise to [the] suit."[22] But the Court may refer to the current version of a statute or regulation for convenience when the provision at issue has not been substantively altered.[23]

In its Order, the Court cited the current version of R590-190-10. Although AOI argues that citation to the 1999 version of R590-190-10 would have been more appropriate, there is no clear error because the relevant provision of the regulation has not been substantively altered such that applying the 2024 version rather than the 1999 version adversely impacts AOI. The 1999 version of the relevant provision reads, "Insurers are prohibited from denying a claim on the grounds of a specific provision, condition, or exclusion unless reference to such provision, condition or exclusion is included in the denial."[24] The 2024 version reads, "An insurer is prohibited from denying a claim on the grounds of a specific provision, condition, or exclusion unless reference to the provision, condition, or exclusion is included in the denial."[25] While the latter has been cleaned up grammatically and delineated such that it is no longer grouped in a block of text, the language is virtually identical. Thus, applying the 1999 version of this

---

[22] *Harvey v. Cedar Hills City*, 2010 UT 12, ¶ 12, 227 P.3d 256 (alteration in original) (internal quotation marks omitted).
[23] *See Miller v. Weaver*, 2003 UT 12, ¶ 17 n.6, 66 P.3d 592 ("All other statutes that have remained unchanged since this case was filed will be cited to their most recent version."); *State ex rel. S.Y.*, 2003 UT App 66, ¶ 16 n.5, 66 P.3d 601 ("For convenience, we cite to the most recent version of the . . . statute, which remains substantively unchanged within the portion cited.").
[24] Utah Admin. Code R590-190-10(2) (1999).
[25] *Id*. R590-190-10(2)(e) (2024).

provision does not change the Court's determination that AOI is foreclosed from arguing that there are no advertising injuries when it did not raise that basis in its denial letter.[26]

AOI's arguments, however, are not directed at the language of the provision the Court applied. Rather, AOI argues that the Court's order relied on the 2024 version to establish private rights in this litigation that purportedly would not have been available under the 1999 version. AOI claims that the language, "[t]his rule is regulatory in nature and is not intended to create any private right of action" in the 1999 version of Utah Administrative Code R590-190-2, which has been removed from the 2024 version of that section,[27] bars the use of the regulation in private litigation. There are several issues with this argument.

AOI either misunderstands the meaning of the phrase "private right of action" or misconstrues it. "A private statutory right of action exists when a private party can bring a lawsuit for relief from injuries caused by another's violation of a . . . statute."[28] Where a statute or regulation does not allow a private cause of action, an insured may not bring a claim against an insurer pursuant to the statute or regulation.[29] Castle has not attempted to bring a cause of action for violations of R590-190-10,[30] and the Court's Order does not allow them to do so, as

---

[26] It may also be noted that Castle cited the 2024 version in their Opposition, ECF No. 45 at 4, and thus AOI had the opportunity to address and draw the Court's attention to this issue in its Reply. However, AOI's Reply contained no reference to the regulation. *See* ECF No. 51.
[27] *See* Utah Admin. Code R590-190-2 (2024).
[28] *Hayden v. Burt & Payne PC*, 2021 UT App 102, ¶ 8, 501 P.3d 106 (alteration in original) (quoting *Buckner v. Kennard*, 2004 UT 78, ¶ 37, 99 P.3d 842).
[29] *See id*. at ¶ 13 (affirming dismissal of complaint for failure to state a claim upon which relief can be granted when plaintiff brought claim pursuant to statute that did not contain an express private right of action).
[30] *See* ECF No. 1, Ex. 1.

that would be contrary to the law.[31] But throughout AOI's briefing,[32] it leaves off the "of action" portion of "private right of action" and attempts to argue that the regulation does not create "private rights," seemingly meaning that the regulation could never be used in civil litigation in such a way that may suggest an individual may have an entitlement, such as an entitlement to insurance coverage. AOI appears to argue that litigants cannot rely on the regulation in civil litigation to any extent.[33] This ignores the plain language of the regulation and authorizing statute, which merely provides that the rule does not create a "private right of action."[34] It does not provide that the Court cannot look to a regulation, which has the "full force and effect of law"[35] and which AOI is required to follow, in determining AOI's duties. As the Utah Supreme

---

[31] *See Saleh v. Farmers Ins. Exch.*, 2006 UT 20, ¶ 27, 116 P.3d 342 ("As for the claimed statutory causes of action, this court recently held that Utah Code section 31A-26-301 does not allow a private cause of action by an insured against an insurer."); *Christensen v. Mid-Century Ins.*, No. 2:19-cv-00164, 2019 WL 2173677, at *2 (D. Utah May 20, 2019) ("[T]he Utah Insurance Code does not establish a private right of action."); *Cannon v. Travelers Indem. Co.*, 2000 UT App 10, ¶ 22, 994 P.2d 824 (affirming the district court's holding that the Utah Unfair Claims Settlement Practices statutes and rules do not create a private right of action).

[32] For example, the full phrase "private right of action" does not appear to be used in AOI's Reply. *See* ECF No. 64.

[33] In support of this assertion, AOI points to a reply brief. *Warren v. Farm Bureau Prop. & Cas. Ins. Co.*, 2:21-cv-00291-HCN, 2021 WL 7186050 (D. Utah Sep. 8, 2021). The docket in *Warren* shows that the motion to dismiss associated with the reply brief was granted; however, it was done so at a hearing with no written order to follow. *See Warren*, 2:21-cv-00291-HCN, ECF No. 16 (D. Utah Feb. 24, 2022). Thus, the Court lacks the ability to determine the basis upon which Judge Nielsen granted the motion. Further, nowhere in that brief is it argued that the regulation cannot be looked to throughout the course of a civil suit. Instead, the defendant in *Warren* argued that the plaintiff could not bring a claim for the breach of R590-190-10 because the regulation is not actionable as a private cause of action. *See Warren*, 2021 WL 7186050. That is not disputed nor is it at issue here, because, as the Court has explained, Castle has not brought such a cause of action.

[34] Utah Admin. Code R590-190-2 (1999); Utah Code Ann. § 31A-26-303(5).

[35] *V-1 Oil Co. v. Dep't of Env't Quality, Div. of Env't Response & Remediation*, 904 P.2d 214, 218 (Utah Ct. App. 1995) ("Administrative rules adopted pursuant to a statutory grant of authority have the full force and effect of law.").

Court has stated, "[e]ven in the absence of a private right of action under [a statute], we would deem it proper for a court to take into account the legislature's mandates, as well as the insurance commissioner's regulations, regarding insurance adjuster duties" in making its determinations.[36]

Further, even were a private right of action at issue in this case, which it is not, the 2024 version has not in fact been amended to allow such actions. "In the absence of language expressly granting a private right of action[,] . . . the courts of [Utah] are reluctant to imply a private right of action based on state law."[37] The 2024 version of R590-190-2 is silent on private rights of action, and the rule's stated purposes do not lend to any inferences of such a right.[38] Moreover, "[a]dministrative agencies have the power to create rules and regulations which conform to the authorizing statute and do not depart from it."[39] Utah Code section 31A-26-303, Unfair Claim Settlement Practices, provides part of the statutory authorization for the regulation,[40] has not been recently amended,[41] and clearly states that "[t]his section does not create any private cause of action."[42] R590-190 cannot create a private right of action where its authorizing statute expressly denies creating such a right. Thus, although the language regarding

---

[36] *Machan v. UNUM Life Ins. Co. of Am.*, 2005 UT 37, ¶ 30, 116 P.3d 342.
[37] *Miller*, 2003 UT 12 at ¶ 20.
[38] *See* Utah Admin. Code R590-190-2 (2024) ("The purpose of this rule is to: (a) set standards for the investigation and disposition of property, casualty, and title claims; and (b) identify an unfair claim practice.").
[39] *State v. Chindgren*, 777 P.2d 527, 529 (Utah Ct. App. 1989).
[40] *See* Utah Code Ann. § 31A-26-303(4) ("The commissioner may define by rule, acts or general business practices which are unfair claim settlement practices, after a finding that those practices are misleading, deceptive, unfairly discriminatory, overreaching, or an unreasonable restraint on competition."); Utah Admin. Code R590-190-1 (1999) ("Authority to promulgate rules defining unfair claims settlement practices or acts is provided in Subsection 31A-26-303(4)."); *id*. R590-190-1 (2024) ("This rule is promulgated by the commissioner pursuant to Sections 31A-2-201, 31A-21-312, 31A-26-301, and 31A-26-303.").
[41] The section was last amended in 1987. *See* Utah Code Ann. § 31A-26-303.
[42] *Id*. § 31A-26-303(5).

private rights of action has been removed from the 2024 version of R590-190-2, an implied private right of action cannot be found in the rule, and a plaintiff would still be precluded from bringing a cause of action for a violation of the regulation.

In sum, as the 2024 version of R590-190-10 has not substantively changed from the 1999 version and applying the latter version has no impact on the Court's determination, there is no clear error warranting reconsideration.

2. Waiver and Estoppel

AOI argues that the Court's Order is a "novel re-working of substantive Utah state law in contravention to holdings from the Utah Supreme Court" regarding the equitable doctrines of wavier and estoppel.[43] With this, AOI misunderstands the Court's Order. The Court's holding that AOI could not pursue the argument at issue was not based on either the doctrine of waiver or the doctrine of estoppel—indeed, neither the word waiver nor estoppel can be found in the Order, and the Court provided no analysis on these doctrines. Rather, the Court held that AOI was foreclosed from pursuing this argument by regulation and statute.[44] As such, there is nothing for the Court to reconsider on these issues.[45]

---

[43] ECF No. 61 at 11.
[44] *See* ECF No. 56 at 7–11.
[45] While Castle asserts that the doctrine of waiver provides an independent basis to deny AOI's attempts to add lack of "Advertising Injury" as a coverage defense when it did not do so in its initial denial letters, this was not the basis of the Court's ruling in its Order. The Court will make no comment as to whether the doctrine of waiver may apply here, as reaching the issue was and remains unnecessary where the Court has held that AOI is foreclosed from pursuing the argument by regulation and statute.

### 3. *Novell* Test

AOI contends that the Court erred in failing to reach the second element of the *Novell* test, where, according to AOI, the Court should have found that the insurer had no duty to defend due to a purported lack of a causal connection between the alleged injuries in the underlying complaint and Castle's advertising activities. Because the Court held that AOI was foreclosed by regulation and statute from raising the argument that no advertising injuries existed, the Court did not reach the *Novell* test in its Order. The Court now looks to the test to determine if any error occurred by the Court's previously not doing so, and the Court finds none. Even had the Court not held that AOI was regulatorily and statutorily barred from asserting the defense at issue, the *Novell* test reveals that the underlying complaint alleges advertising injuries so as to trigger AOI's duty to defend.

The Tenth Circuit has set forth "a two-part test to determine whether an insurer has a duty to defend an 'advertising injury' claim: the court must first determine whether the complaint alleges a 'predicate offense,' that is, one of the types of conduct specifically listed in the policy's definition of 'advertising injury.'"[46] If such a predicate offense is alleged, "then the court must examine whether there is a causal connection between the alleged injuries and the insured's advertising activities."[47] This analysis is highly case specific, turning on the particular policy language and allegations in the underlying litigation.[48]

---

[46] *Hartford Cas. Ins. v. Softwaremedia.com*, No. 2:10-cv-01098-BSJ, 2012 WL 965089, at *7 (D. Utah Mar. 20, 2012) (citing *Novell, Inc. v. Fed. Ins. Co.*, 141 F.3d 983, 990 (10th Cir. 1998)).
[47] *Id*.
[48] *See Novell*, 141 F.3d at 988 (stating, in distinguishing similar case law, "[w]hether or not the *Sentex* decision is correct, its underlying facts are different from those at hand."); *Derma Pen, LLC v. Sentinel Ins. Co.*, 545 F. Supp. 3d 1177, 1197 (D. Utah 2021) (in distinguishing similar

As required under the first part of the *Novell* test, the underlying Complaint filed by 9SITA contains several allegations describing conduct specifically listed in the Policy's definition. The Policy covers, subject to certain exclusions, "personal and advertising injur[ies]"[49] defined in relevant part as:

> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; . . .
> f. The use of another's advertising idea in your "advertisement"; or
> g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."[50]

9SITA alleges that "Castle has made false statements on its website concerning the specifications of [9SITA] . . . compared to Castle's product."[51] 9SITA then alleges in support of its Violations of the Utah Truth in Advertising Act claim that "Castle has . . . disparaged [9SITA's] game by making false and/or misleading factual representations, including but not limited to representations concerning the cost, weight, and assembly time of [9SITA's] game."[52] Such allegations appear to describe "written publication . . . of material that disparages a person's or organization's goods, products, or services." Thus, advertising injuries under the Policy's language are alleged.

9SITA also alleges that "Castle . . . created photographs of its products to look like [9SITA's] product in the angle and feel of the pictures;"[53] that Castle used 9SITA's product bags

---

case law, District Judge Nuffer noted that "these cases turned on the specific policy language and trademark infringement allegations at issue in each case.").

[49] ECF No. 22, Ex. 4 at INSURED000418 ("We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies.").

[50] *Id*. at INSURED000426.

[51] ECF No. 22, Ex. 5 ¶ 52.

[52] *Id*. ¶ 72.

[53] *Id*. ¶ 28.

to market its product;[54] and that Castle displayed images on their online vendors' websites that were "strikingly similar to the images [9SITA] uses on its online sales channels."[55] In this way, 9SITA alleges that "Castle has used and continues to use its confusingly similar trade dress . . . in connection with the sale, offering for sale, distribution, and *promotion* of its 9 Square Castlesquares game"[56] and that "Castle . . . targets the same consumers, in the same markets, *through the same types of marketing efforts* as [9SITA]."[57] These allegations seem to describe "infringing upon another's . . . trade dress . . . in your 'advertisement." Thus, again, advertising injures as defined by the Policy are alleged.

As several predicate offenses are alleged, the Court moves to the second portion of the inquiry: whether there is a causal connection between the alleged injuries and the advertising activities. AOI claims that the legal cause of 9SITA's alleged damages was the theft of a product idea, not an advertising idea. Certainly, the underlying Complaint contains allegations regarding the sale of a "knock off" product,[58] but the Complaint also contains allegations that 9SITA was damaged by Castle's advertising specifically. 9SITA alleges that it suffered damages because Castle infringed upon 9SITA's trade dress in the promotion of Castle's game.[59] 9SITA also brings a claim for Violations of the Utah Truth in Advertising Act, the basis of which includes Castle's alleged disparagement of 9SITA's game on Castle's website,[60] and 9SITA alleges it is

---

[54] *Id.* ¶ 29.
[55] *Id.* ¶ 33.
[56] *Id.* ¶ 62 (emphasis added).
[57] *Id.* ¶ 60 (emphasis added).
[58] *Id.* ¶ 32.
[59] *See id.* ¶¶ 62, 65.
[60] *Id.* ¶¶ 70–76.

at a minimum entitled to statutory damages for these injuries.[61] In this way, the underlying Complaint alleges damages arising out of Castle's advertising activities such that the second part of the *Novell* test is satisfied.

An insurer's duty to defend arises if there is potential rather than actual liability.[62] Here, as the *Novell* test is satisfied, the underlying Complaint alleges advertising injuries that give rise to potential coverage under the Policy, and AOI's duty to defend was thus triggered.[63] Therefore, the Court's relying on R590-190-10 and not reaching the *Novell* test did not result in an improper expansion of the Policy's coverage or in an incorrect determination regarding AOI's duty to defend. As such, the Court will decline to reconsider its ruling.

B.   CERTIFICATION

AOI asks the Court to certify three questions to the Utah Supreme Court. Those questions are as follows: (1) "Do the standards announced in the current, 2024-enacted version of Utah Regulation R590-190 establish substantive rights that can be enforced by private parties . . . in civil litigation?";[64] (2) "Is the January 23, 2024, modification . . . of Utah Regulation R590-190 retroactive to apply to a claims decision on July 12, 2023, or to claims asserted in a lawsuit filed prior to January 23, 2024 . . .?";[65] and (3) "[D]oes Utah Regulation R590-190 establish a legal right to assert 'waiver' . . . as an affirmative defense of a private party in litigation over the duty

---

[61] *Id.* ¶ 74.
[62] *Sharon Steel Corp. v. Aetna Cas. & Sur. Co.*, 931 P.2d 127, 133 (Utah 1997) ("[An insurer's] defense duty arises when the insurer ascertains facts giving rise to potential liability under the insurance policy.").
[63] AOI does not ask the Court to reconsider its holding that because some of the allegations did not fall within the Policy's exclusions, AOI's duty to defend was not excused. Thus, the Court will not further discuss the Policy's exclusions.
[64] ECF No. 61 at 14–15.
[65] *Id.* at 15.

to defend in an insurance coverage dispute . . .?"[66] The Court, however, finds that AOI's request for certification is not well taken.

The certification of state law questions to a state supreme court is discretionary rather than automatic.[67] "Certification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law,"[68] as it is a federal court's duty to decide the questions of state law before it when its jurisdiction has been properly invoked.[69] Significantly, as the Tenth Circuit has stated, certification is generally inappropriate "when the requesting party seeks certification only after having received an adverse decision from the district court."[70] Here, it appears that AOI believed the Court "had sufficient guidance to rule in [its] favor on the motion for summary judgment,"[71] as it moved for certification only after it received an adverse decision. "If such a procedure were to be allowed, it would in effect allow a party to make a motion, argue the merits, and then after losing on an issue, use certification as an interlocutory appeal for an interim decision by a federal court to the Utah Supreme Court."[72] "The rule allowing certification was never intended to allow such a result."[73]

Moreover, "[i]n deciding whether to certify a question, the court must consider 'whether certification will conserve the time, energy, and resources of the parties as well as of the court

---

[66] *Id.*
[67] *Massengale v. Okla. Bd. of Exam'rs in Optometry*, 30 F.3d 1325, 1331 (10th Cir. 1994).
[68] *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988)
[69] *See Meredith v. City of Winter Haven*, 320 U.S. 228, 234 (1943) ("[I]t has from the first been deemed to be the duty of the federal courts, if their jurisdiction is properly invoked, to decide questions of state law whenever necessary to the rendition of a judgment.").
[70] *Massengale*, 30 F.3d at 1331.
[71] *1.800.Vending, Inc. v. Wyland*, No. 1:14-cv-00121-CW, 2017 WL 108033, at *2 (D. Utah Jan. 11, 2017).
[72] *Id.*
[73] *Id.*

itself.'"[74] When certification is sought after a ruling, as AOI has done here, "the time and resources already expended resolving the matter counsel against certification."[75]

Furthermore, certification is appropriate "where the question before [the Court] (1) may be determinative of the case at hand and (2) is sufficiently novel that [the Court] feel[s] uncomfortable attempting to decide it without further guidance."[76] The questions AOI seeks to certify appear to stem from AOI's misunderstanding of the Court's Order and from legal arguments that the Court declines to adopt. The Court has provided clarification on the issues above. The issues did not impact the outcome of the Court's decision. Thus, it does not appear to the Court that novel, outcome-determinative questions of state law for which certification would be warranted presently exist.

Overall, given that AOI seeks certification only after an adverse decision, AOI's request is not well taken and is denied.

## ORDER

Based on the foregoing, the Court DENIES Defendant's Motion for Reconsideration or, in the alternative, Motion to Certify Questions to the Utah Supreme Court (ECF No. 61).

DATED this 5th day of November 2025.

Ann Marie McIff Allen
United States District Judge

---

[74] *Roberts v. C.R. England, Inc.*, 321 F. Supp. 3d 1251, 1261 (D. Utah 2018) (quoting *Boyd Rosene & Assocs., v. Kansas Mun. Gas Agency*, 178 F.3d 1363, 1365 (10th Cir. 1999)).
[75] *Id.*
[76] *Lane v. Progressive N. Ins. Co.*, 800 F. App'x 662, 664 (10th Cir. 2020) (unpublished).